William J. Drieborg and Laura D. Drieborg v. Commissioner. William J. Drieborg v. Commissioner.
Drieborg v. Commissioner
Docket Nos. 40112, 40113.
United States Tax Court
1954 Tax Ct. Memo LEXIS 292; 13 T.C.M. (CCH) 170; T.C.M. (RIA) 54060; February 24, 1954
*292 Donald G. Tripp, Esq., 1423 Ford Building, Detroit, Mich., for the petitioners. Peter K. Nevitt, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax and income and victory tax of the petitioners and additions to tax for fraud as follows for the indicated years: Docket
Deficiency
Addition
No.
Year
in tax
to tax
William J. Drie-
borg
40113
1941
$ 346.98
$ 173.49
1942
1,257.29
628.65
1943 *
1,657.15
764.11
1944
3,608.56
1,804.28
1945
3,327.87
1,663.94
1946
2,159.20
1,079.60
1947
5,013.20
2,506.60
William J. Drie-
borg and Laura
D. Drieborg
40112
1948
4,345.08
2,172.54
1949
1,760.44
880.22
1950
2,809.52
1,404.76
By amendments to his answers, the respondent has alleged that the income reported by the petitioners was understated by greater amounts than determined by him and has moved to increase the deficiencies in tax and additions to tax from the abovestated amounts to the following amounts: Docket
Deficiency
Addition
No.
Year
in tax
to tax
William J. Drie-
borg
40113
1941
$ 378.48
$ 189.24
1942
1,360.20
68.010
1943
1,786.23
828.65
1944
4,641.07
1,959.04
1945
3,612.41
1,806.21
1946
2,346.23
1,173.12
1947
5,502.22
2,751.11
William J. Drie-
borg and Laura
D. Drieborg
40112
1948
4,757.92
2,378.96
1949
1,963.02
981.51
1950
3,084.76
1,542.38
The *293 issues presented by the pleadings are the correctness of the respondent's action (1) in determining that the income reported by the petitioners for the years 1941 through 1950 was understated, (2) in determining that the petitioners were liable for additions to tax for fraud for the years 1941 through 1950 under section 293 (b) of the Internal Revenue Code, (3) in determining that the period of limitations for assessment of tax for the years 1941 through 1947 has not expired, and (4) in denying the benefit of the tax forgiveness provisions of the Current Tax Payment Act of 1943. Findings of Fact A portion of the facts have been stipulated and are found accordingly. William J. Drieborg, sometimes hereinafter referred to as the petitioner, resided with his wife, Laura D. Drieborg, in Grand Rapids, Michigan, during the years 1941 through 1950. The petitioner filed Federal income tax returns for the years 1941 through 1947 and joint Federal income tax returns with his wife for the years 1948 through 1950 with the collector for the district of Michigan at Detroit. The petitioner was born and reared in Grand Rapids, Michigan. He graduated from high school and business college, but did not *294 study either bookkeeping or accounting. For the years 1917 through 1940 the petitioner filed no Federal income tax returns except for the years 1937 and 1938, for which he filed returns showing no tax liability. About 1922 the petitioner purchased a residence situated at 1236 Thomas Street in Grand Rapids which, for an undisclosed time, he occupied as a home. At some undisclosed time prior to 1934 he ceased to occupy the property. In December 1934 the property was sold at a sheriff's sale because of petitioner's default in payment of a mortgage which had been outstanding on the property for several years. Thereafter, with some financial assistance from an estate of which his brother, John Drieborg, was trustee and by reason of a moratorium statute the petitioner was able to reacquire the property. In the late 1930's the petitioner again began occupying the property as his home and continued to do so throughout the taxable years involved herein. In April 1923 the petitioner pleaded guilty to a violation of the Volstead Act and was sentenced to 20 months' imprisonment and fined $500. In March 1928 petitioner was convicted of violating the National Prohibition Act and was sentenced to *295 3 years' imprisonment and fined $500. In January 1929 the petitioner pleaded guilty to a violation of the National Prohibition Act and was fined $1,000 and, in default of payment of the fine, was to be imprisoned not to exceed 8 months. In order to obtain his release from prison and to be relieved of payment of the $1,000 fine, the petitioner, on May 13, 1931, swore that he did not have any property to the amount of $20, except such as was by law exempt from being taken on civil precept for debt by the laws of the United States. In connection with the fine of $500 imposed in March 1928, the petitioner, on May 19, 1931, stated to the United States Marshal for the Western District of Michigan, Southern Division, that he had no property of any kind. Petitioner testified at the hearing herein that at the time of the oath and of the statement, and for some years before and after, he had at his home about $5,000 in cash. In 1933 or 1934 the petitioner and his first wife were divorced and in connection therewith he paid her approximately $1,000 in a property settlement which was handled by his brother. In the 1920's the petitioner made a loan to the owner of the property situated at 1960 *296 South Division Avenue in Grand Rapids and took a mortgage thereon as security. Thereafter the owner and the petitioner obtained from a bank a joint loan secured by a mortgage on the property. About 1935 the bank foreclosed its mortgage because of the default by the owner and the petitioner in making payment of the loan. During the middle 1930's the petitioner began the operation of a bar business which thereafter was acquired and operated by a corporation known as Cocktail Arbor Bar, Inc. In 1939 the petitioner owned 1,300 shares of stock in that corporation. By reason of a court decree entered against him in that year, wherein it was found that petitioner had embezzled $4,280.11 of the corporation's funds and had wrongfully retained other funds of the corporation in the amount of $321.64, and as a result of his failure to repay said sums, he lost his stock in the corporation. In June 1940 the petitioner purchased from Joseph Maloley at a cost of $8,500 the furniture and fixtures and the Class C liquor license owned by Maloley and used by him in the conduct of a restaurant and bar business in Grand Rapids which operated under the name of Homewood Cafe. The purchase price was payable *297 $4,000 at the time of closing the sale and the remainder, $4,500, was to be paid in installments of $150 per month. The petitioner allocated $4,025 of the purchase price to the furniture and fixtures, thus leaving the remainder of $4,475 as applicable to the license. At some undisclosed time after the purchase the name under which the business was conducted was changed to Par 4 Cocktail Lounge. Throughout the years 1941 through 1950 the petitioner continued to own and operate the business, which sometimes hereinafter is referred to as the tavern. At or about the time the petitioner purchased the tavern, Z. B. Littell loaned him $2,500. Also during 1940 one Ryskamp loaned him $600, John Drieborg loaned him $950, and petitioner also obtained a loan of $314.55 on his automobile. All of the foregoing loans were still owing by petitioner at the end of 1940. The petitioner's tavern is a popular eating and drinking place and caters to a middle class clientele. From about the middle of June 1941 through 1950 the petitioner, himself, kept such books and records as were maintained for the tavern business. When in 1950 a revenue agent called upon petitioner to make an investigation of his tax *298 liability, petitioner advised him that Thomas F. McGuire was his bookkeeper and had his books and records and for him to see McGuire. When contacted by the agent, McGuire produced some retained copies of the petitioner's income tax returns but had no books or records of the petitioner. Thereupon the agent contacted the petitioner and advised him that it would be necessary for him to produce his books and records in order that an examination could be made of them. Petitioner has no record of his gross receipts or purchases for 1941 through 1946. His records of purchases for 1947 through 1949 consist of lists of amounts shown under the headings of liquor, food, beer and merchandise with no detail as to the items involved or the dates of the alleged purchases. The petitioner has no record of gross receipts for 1947 through 1949. Nor does he have any record of purchases for the first eight months of 1950. His record of gross receipts for 1950 consists of weekly entries. Some of the entries have been partially erased and replaced by smaller amounts. The gross receipts shown by petitioner's record for 1950, whether before or after alteration, were not used as his gross receipts in his income *299 tax return for that year. In the foregoing situation the respondent determined that the petitioner's books and records did not correctly reflect his income for the years in question. Accordingly, he determined petitioner's income for such years by the use of an increase in net worth method, plus additions for personal and living expenses as determined by him. In that manner the respondent determined the petitioner's corrected adjusted gross income for such years. From the corrected adjusted gross income thus determined for the respective years, the respondent deducted the adjusted gross income reported in the petitioner's income tax returns for said years to ascertain the amounts by which the petitioner's income arrived at on the above-mentioned basis was in excess of or less than the amounts reported by petitioner for the respective years. From the foregoing the respondent determined that during the period from January 1, 1941 to December 31, 1950, the petitioner had received income in the total amount of $90,144.16 which had not been reported. In order to allocate the total amount of understated income to the years when it was most likely received, the respondent allocated it to *300 the respective years on the basis of the cost of goods sold as shown in petitioner's returns for such years with adjustments made as a result of a check of petitioner's liquor purchases as shown by the records of the Liquor Control Commission of the State of Michigan. The cost of goods sold by the petitioner for the various years as thus determined and used by the respondent in making an allocation of the total understated income to those years was as follows for the indicated years: Cost of
Year
goods sold
1941
$ 9,730.00
1942
18,017.30
1943
16,533.90
1944
30,673.13
1945
28,664.32
1946
26,573.48
1947
51,012.08
1948
57,302.76
1949
46,502.80
1950
52,952.88
Total
$337,962.65
The total understatement of gross income, $90,144.16, as determined by respondent was allocated to the various years as follows and shown in the deficiency notices as the amounts by which income had been understated for the respective years: 1941
$ 2,594.69
1942
4,804.66
1943
4,409.08
1944
8,179.57
1945
7,643.89
1946
7,086.32
1947
13,603.34
1948
15,280.87
1949
12,400.85
1950
14,120.89
$90,144.16
In making the foregoing determinations the respondent did not include, at January 1, 1941, as an asset an automobile owned by petitioner on that date and which had cost *301 him $600, and did not include as liabilities the following indebtedness of the petitioner owing on that date: Loan from one Ryskamp $600, loan on car $314.55, short term bank loan $100, and on note to John Drieborg $950. Nor did the respondent include, at December 31, 1950, as assets of the petitioner, Burton Heights stock and Kusma Land contract owned by him on that date and which had cost him $2,100 and $6,250, respectively, and did not include as liabilities of the petitioner the following indebtedness owing by him on that date: Land contract Kusma property $3,000 and short term bank loan $300. By reason of the respondent's failure to include the foregoing items in the petitioner's assets and liabilities on the respective dates, the total understatement of gross income for the period January 1, 1941 to December 31, 1950, as determined by him, $90,144.16, was understated by $6,414.55, the correct total understatement being $96,558.71. An allocation of the latter amount to the years in controversy on the basis of cost of goods sold in the respective years as set out above discloses understatements in reported gross income for the indicated years as shown in the following table which *302 also shows the gross income reported by petitioner for the respective years: Under-
Gross Income
Year
statement
Reported
1941
$ 2,779.94
$ 3,716.34
1942
5,147.69
4,212.68
1943
4,723.87
7,262.64
1944
8,763.58
9,710.54
1945
8,189.63
9,699.36
1946
7,592.26
6,000.33
1947
14,574.58
5,471.40
1948
16,371.88
10,945.88
1949
13,286.20
(793.30)
1950
15,129.08
1,552.85 The petitioner has submitted no plausible evidence to show wherein a determination of understatement of income of $96,558.71 for the years involved herein is erroneous and has offered no evidence to show that the respondent's method of allocating the total understatement of income over the years in controversy was unfair or erroneous. During the years 1941 through 1950 the petitioner and his wife worked in the tavern, except for about a year during 1947 or 1948 when she did not work because she was sick. Except for meals which were eaten at home on Sundays, the petitioner and his wife took their meals at the tavern. The food used for the meals at home was taken from the tavern. The petitioner took cash of $50 a week from the tavern receipts and his wife took $40 a week. During the period 1941 through 1950 the petitioner and his wife resided in the house owned by *303 petitioner at 1236 Thomas Street which he had purchased in 1922. During the years 1942 through 1947, a new roof was put on the house at a cost of $300 and an oil furnace was installed at a cost of $1,080. The garage was also remodeled at a cost of $800. In 1948 the petitioner purchased a residential property at Holland, Michigan, on or near a lake at a cost of $14,000 and in the same year had an oil furnace installed therein at a cost of $1,093. This property was used by petitioner as a summer home. In 1948 the petitioner purchased a boat at a cost of $3,578.23. The petitioner owned and operated two automobiles during the years 1941 through 1950. In 1947 he purchased a Buick automobile at a cost of $2,482.69 and in 1949 purchased a Chrysler for $3,000. The petitioner drove one car and his wife the other. The cars were used by them for driving back and forth between home and the tavern and on occasions petitioner would take the tavern help home at night. Each car was driven approximately 10,000 miles yearly. During the period from 1941 through 1950 the petitioner also had certain legal expenses of undisclosed amounts which were incurred in connection with litigation in which he was *304 involved. The income tax returns filed by petitioner for the years 1941 through 1950 were prepared by Thomas F. McGuire, an accountant, who was employed by Kent County (Michigan) Welfare Board for a number of years prior to his death which occurred about 1952 and prior to the hearing of these proceedings. McGuire stated on the return for 1950 that it was prepared from figures submitted by the petitioner. He stated on an amended return filed by petitioner for 1948 that it was prepared from "Figures submitted by taxpayer based on audit by Michigan Dept. of Revenue." The other returns in evidence do not indicate where McGuire obtained the figures disclosed therein. The petitioner's income tax returns for 1945, 1946 and 1947 were filed with the collector on March 15, 1946, March 15, 1947 and March 15, 1948, respectively. The notice of deficiency covering said years was mailed to the petitioner on February 13, 1952. The petitioner's books and records for the years 1941 through 1950 did not correctly reflect his income for those years. The petitioner's income tax returns for the years 1941 through 1950 were false and fraudulent and were made with intent to evade tax. Opinion We will consider *305 first the issue of whether the respondent erred in determining that the petitioner understated his income for the years 1941 through 1950. As set out in our findings, the respondent determined an understatement in the petitioner's income for each of the years in question and that the total of such understatements for said years was $90,144.16. By amendments to his answers, he moved to increase the income for the respective years because of his failure to include in the petitioner's assets at January 1, 1941 and December 31, 1950, certain assets owned by petitioner on the respective dates, and to include certain debts owing by him on such dates, all of which assets we have found as facts that the petitioner owned, and all of which debts we have found as facts that the petitioner owed, on the respective dates. The amount of the increase resulting from the inclusion of those items is $6,414.55 which when added to the $90,144.16 above gives a total of $96,558.71 which the respondent contends is the correct amount by which the petitioner's income was understated for the years 1941 through 1950. At the direction of the Court, the respondent filed the first brief. In his brief he requested *306 that we find as facts that the petitioner has submitted no plausible evidence to explain wherein a determination of a total understatement of $96,558.71 in his income for the years in question is erroneous and that the petitioner offered no evidence to show that the respondent's method of allocating the total understatement of income over the years in controversy was unfair or erroneous in any way. In his brief, the petitioner stated that he had no exceptions to such request of the respondent and proposed like findings. Since the findings requested correctly reflect the state of the record, we have made findings of fact accordingly. Despite the concessions favorable to the respondent indicated by petitioner's position with respect to the above-mentioned findings, the petitioner makes certain arguments as to why the respondent's position as to the amounts of understated income for the respective years should not be sustained. Petitioner first contends that the income tax returns filed by him for the years 1941 through 1944 are not in the record. While it is true that those returns are not in the record, it is also true that the record does not disclose that petitioner requested the *307 respondent to produce them, or that the petitioner offered in evidence copies thereof because of respondent's failure to produce the originals, or that the petitioner offered any proof of the contents of any of the returns. Furthermore, there is nothing in the record to indicate that if the returns or copies thereof had been put in evidence, they would support a conclusion that petitioner's income for those years either was not understated in the respective returns or was not understated by the amounts shown by the record as it now stands. In this situation the contention of the petitioner appears to be without merit. With respect to the years 1945 through 1950, the petitioner urges that his testimony that he kept a detailed record of receipts and disbursements of the tavern business for said years and turned them over to McGuire, a qualified accountant, is undisputed; that McGuire prepared the returns; and that because of the respondent's delay in making the examination and in issuing the notice of deficiency McGuire died before the hearing and therefore petitioner has been deprived of any help from him in reconciling his increases in net worth with his returns. The petitioner testified *308 that from about the middle of June 1941 through 1950 he, himself, kept the books and records for the tavern business and that after the close of each year he turned over those books and records to McGuire with instructions to prepare his income tax returns therefrom. The petitioner's returns for the years 1945 through 1950 show that they were prepared by McGuire. The revenue agent began his examination of the petitioner's affairs in 1950 and at the beginning of the examination was told by petitioner that McGuire was his bookkeeper and had his books and records and to see him. According to the above-mentioned testimony of petitioner, he, and not McGuire, was the bookkeeper. However, when the agent contacted McGuire he found that while McGuire had some retained copies of petitioner's returns, he had none of petitioner's books and records. Petitioner's amended return for 1948 shows that it was prepared by McGuire in May 1950 from figures submitted by petitioner. Petitioner's return for 1950, the year in which the examination began, also shows that it was prepared by McGuire in March 1951 from figures submitted by petitioner. The returns for 1945, 1946, 1947 and 1949 do not indicate from *309 what they were prepared. The evidence shows that the petitioner has no record of purchases or gross receipts for the years 1941 through 1946, that he has no record of gross receipts for the years 1947 through 1949 and his records of purchases for those years consist of lists of figures under various headings with no detail as to the items involved or the dates of the alleged purchases, and that he has no record of purchases for the first 8 months of 1950. His records of gross receipts for that year show instances of having been altered and that the amount of gross receipts indicated by the books, either before or after alteration, was not the amount of gross receipts reported by petitioner in his return for 1950. In the confused and conflicting situation thus presented, we are unable to find that the petitioner ever furnished McGuire with his books and records or that he ever furnished him with anything other than the items and amounts that he desired to have shown in his income tax returns. The fact that returns for two years show that they were prepared from figures furnished by petitioner constitutes a contradiction of the petitioner's testimony as to his practice throughout the *310 years before us. If, as petitioner testified, he, himself, kept the records of all receipts and expenditures during the years involved, he would be more familiar with what was shown therein than anyone else and certainly was better able than McGuire would have been had he lived to reconcile their contents with the contents of the net worth statement employed by respondent in determining the deficiencies. Furthermore, the petitioner testified that all the books and records that he had for the years 1945 through 1950 were in the courtroom and in the custody of his counsel at the time of the trial pursuant to subpoena by respondent. However, petitioner did not offer them in evidence and his failure in this respect gives rise to the presumption that if they had been placed in evidence they would have been unfavorable to him. Wichita Terminal Elevator Co., 6 T.C. 1158; affd., 162 Fed. (2d) 513. From the record before us, we are unable to conclude that in determining the deficiencies for the years in question the respondent erred except in the omission from the net worth statement of certain assets and liabilities at January 1, 1941, and at December 31, 1950. However, as a result of amendments *311 to his answers, and the evidence submitted in support thereof, the error resulting from such omissions has now been remedied. The next issue relates to the respondent's determination that the petitioner was liable under section 293 (b) of the Internal Revenue Code for additions to tax for the years in question on account of fraud. The respondent has the burden on this issue. The evidence shows that in addition to operating the tavern the petitioner, himself, kept such books and records as were maintained for it. For 10 successive years the petitioner uniformly reported in his income tax returns much smaller amounts of income than are here shown to have come into his hands during the respective years. The implication of petitioner's contentions is that since McGuire was furnished with the books and the records each year, responsibility for the repeated understatements of income is attributable to him. So far as the record shows, McGuire was a man of integrity and at least of some ability as an accountant. However, from the evidence relating to the books kept by petitioner over the years, it is apparent that neither McGuire nor anyone else could prepare correct income tax returns from *312 them. In this situation, and since the figures reported on petitioner's returns had to come from some source and since the returns for two years definitely show that the figures for those years came from petitioner, we cannot conclude that McGuire was responsible for the understatements of income contained in the petitioner's returns for any of the years. Because of his intimate connection with his business and the records he maintained therefor, we think petitioner not only was not ignorant of the large understatements of income reported over the years but was aware of, and responsible for, such understatements. Accordingly, we have found as a fact that his returns were false and fraudulent and were made with intent to evade tax. As a consequence, the respondent's request for increases in the amounts determined by him as additions to tax for fraud is allowed. The petitioner has assigned as error the respondent's failure to determine that the periods of limitations for assessing income tax for the years 1941 through 1947 have expired. Since the petitioner's income tax returns for those years are false and fraudulent and were made with intent to evade tax, the periods of limitations *313 for assessment of tax for those years have not expired. Section 276 (a) of the Internal Revenue Code. A further error assigned by petitioner is that the respondent denied him the benefit of the tax forgiveness provisions of the Current Tax Payment Act of 1943. Subsections (a) and (b) of section 6 of that Act provide that the tax forgiveness provisions contained therein "shall not apply in any case * * * in which additions to the tax for such taxable year are applicable by reason of fraud." Since the petitioner was subject to additions to tax for fraud, the respondent did not err in the denial complained of. Decisions will be entered for the respondent. Footnotes
*. The deficiency for 1943 is in income and victory tax.↩